FILED

97 APR 28 PM 4:31

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 28 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDITH SUMRALL, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 96-B-1215-S |
| SOUTHERN COMFORT CONVERSIONS, INC., | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

This matter is before the court on the Motion for Summary Judgment filed by defendant Southern Comfort Conversions, Inc. ("Southern Comfort"). Plaintiff Judith Sumrall has alleged that she was discriminated against on the basis of her sex. Defendant denies her allegations and has moved for summary judgment. Defendant's motion is unopposed. Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

## FACTUAL SUMMARY

Plaintiff alleges that defendant discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff does not state her complaint in specific counts, but she appears to be stating claims for sexual harassment due to a hostile work environment, (Compl. ¶ 16), and that she was discriminated against in being forced to quit her job. (Compl. ¶ 15). Plaintiff also alleges that she was discriminated against in the terms and conditions of her employment, (Compl. ¶ 16), but she does not specify the manner in which that discrimination occurred.

Defendant's business is primarily van and truck conversions. Plaintiff was hired by defendant in January 1991 as a seamstress in the upholstery department. Plaintiff's primary responsibility was to be the sewing and button-making required for the van conversions. After plaintiff was hired but before plaintiff began work, however, the upholsterer, who was responsible for fitting truck seats with custom covers, left her position with defendant. As a result, the upholsterer and seamstress positions both fell to plaintiff when she began work.

The job of upholsterer involves lifting the truck seats on which the covers are to be fitted. Plaintiff has a back condition that prevented her from lifting the truck seats, and she took on the upholsterer responsibilities with the understanding that she would not have to lift the truck seats. To accommodate plaintiff, defendant had the truck seats removed and brought to plaintiff's work station so that plaintiff would not have to lift them.

Performing work in both positions became difficult for plaintiff. Production had increased at defendant's business, and the volume was such that one person could not keep up. Thus, plaintiff was really doing the work of two people. (Pl.'s Dep. at 135). She had discussions with Steve McSweeney, the Production Shop Manager, that she was having difficulty doing the work of both upholsterer and seamstress and that she needed help. (Pl.'s Dep. at 135). In fact, the volume was such that plaintiff began seeking help on her own so that she could keep up and make more money.[1] First, plaintiff's husband helped her. Her husband was not an employee of

---

[1] Plaintiff was paid on a per piece basis--per truck seat she covered or curtain she sewed, and so on. Thus, if she stayed late or got some help, she got paid more because she completed more pieces.

2

defendant, however, and due to legal concerns, defendant would not let him work there as a non-employee.

Plaintiff then brought a woman named Jennifer Daw to help her with her duties. Ms. Daw was also not an employee of defendant, but defendant hired Ms. Daw to avoid the legal problems associated with non-employees working in the production shop. Defendant did not require Ms. Daw to fill out an application nor was she interviewed before she was hired. Defendant was soon dissatisfied with its decision, however. Steve McSweeney stated that after Ms. Daw was hired he never saw her do any work and that he began to be concerned that she was taking advantage of plaintiff. (Declaration of Stephen McSweeney ("S. McSweeney Dec.") ¶ 14). Shortly thereafter, Rod McSweeney, defendant's president, asked Ms. Daw to sew an item for him, and Ms. Daw informed him that she did not know how to sew. (Declaration of Rod McSweeney ("R. McSweeney Dec.") ¶ 5). Rod McSweeney then instructed Steve McSweeney to "make a change" because defendant "did not need an employee in the Upholstery Department who did not know how to sew." (R. McSweeney Dec. ¶ 5).

In light of plaintiff's need for assistance and Ms. Daw's unsatisfactory performance and inability to sew, Steve McSweeney "accelerated [his] search for an Upholsterer." (S. McSweeney Dec. ¶ 16). Shortly thereafter, defendant received an application for employment from Tim Bowman. Steve McSweeney determined that Mr. Bowman was well qualified for the position of upholsterer. Before hiring Mr. Bowman, however, Mr. McSweeney consulted with plaintiff and explained that Ms. Daw would have to be dismissed before Mr. Bowman could be hired. Steve McSweeney stated that plaintiff initially agreed to this arrangement, and Mr. Bowman was offered the job, and he accepted.

3

Plaintiff then asked Steve McSweeney not to hire Mr. Bowman and not to release Ms. Daw. Defendant chose not to alter its decision, however, "[i]n light of (a) Mr. Bowman's obvious qualifications, (b) Southern Comfort's commitment to Mr. Bowman, (c) Mr. Bowman's tender to his former employer of his resignation, and (d) Ms. Daw's inability to sew." (S. McSweeney Dec. ¶ 21). Therefore, Mr. Bowman was employed as the upholsterer and Ms. Daw was released. Either on the same day that Ms. Daw was terminated and Mr. Bowman began work, or the day after, plaintiff resigned her position at Southern Comfort. (*See* Compl. ¶¶ 12, 15; S. McSweeney Dec. ¶ 22). Steve McSweeney asked plaintiff to reconsider her decision, but she resigned anyway. (S. McSweeney Dec. ¶ 23).

Plaintiff makes various allegations in her complaint of a hostile work environment. She contends that she was called a "dumb bitch" on two occasions, both in or prior to the spring of 1993. (Compl. ¶ 9; Pl.'s Dep. at 86-89). Plaintiff also stated that on one occasion, in late 1991 or early 1992, she was told by Steve McSweeney that "she must have PMS." (Compl. ¶ 10; Pl.'s Dep. at 86). Furthermore, she alleges that "Mr. McSweeney"[2] stated that Southern Comfort was making more money and could, therefore, pay the men more so that their wives "could stay home where they belonged." (Compl. ¶ 11). Plaintiff also asserts that Mr. McSweeney told her that he wished he could hire her husband so that she could stay home, too. (Compl. ¶ 11). Finally, plaintiff contends that either she or Ms. Daw was told that Mr. Bowman was being hired as the upholsterer because "recovering truck seats was a man's job." (Compl. ¶ 12).

---

[2] Plaintiff does not specify whether she is referring to Rod or Steve McSweeney. Based on the defendant's response, the court believes plaintiff is referring to Rod McSweeney and will take that as fact.

Rod McSweeney "categorically" denied making any comments that he was not in favor of women in the workplace or that he would prefer to employ plaintiff's husband rather than plaintiff. (R. McSweeney Dec. ¶ 7). Steve McSweeney stated that plaintiff had never complained to him of being called a "dumb bitch," and that he would not "condone the use of such language in the workplace." (S. McSweeney Dec. ¶ 24). Furthermore, he denied ever saying that plaintiff must have PMS. He also denied ever saying that upholstering is a "man's job," and supported Rod McSweeney's contention that Rod McSweeney had not made the sexist comments attributed to him by plaintiff. (*Id.* ¶ 25).

In her complaint, plaintiff asserts that she was forced to quit her job. In her deposition she states two reasons why she resigned: because she was angry that the upholsterer position had been given to a man and because she could not afford to stay because of income she would lose doing only one job.

Plaintiff filed her charge of discrimination with the EEOC on or about February 1, 1995. (Compl. ¶ 5).

## SUMMARY JUDGMENT STANDARD

The present motion for summary judgment is unopposed. Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the

5

ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* Fed. R. Civ. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.[3] Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Thus, although a court may not grant a motion for summary judgment simply because the motion goes unopposed, it may do so if summary judgment is otherwise appropriate.

## DISCUSSION

Applying the summary judgment standard to the facts of this case, the court concludes that there is no genuine issue as to any material fact, and plaintiff is entitled to a judgment as a matter of law. Plaintiff has not come forward with any evidence, much less evidence showing a dispute as to any factual contention of defendant. Thus, plaintiff has not met her burden "to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

---

[3] Specifically, Rule 56(e) provides:
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Furthermore, plaintiff as failed to present any evidence in support of the elements of her claims. Therefore, defendant is entitled to judgment as a matter of law.

Plaintiff contends that she was forced to quit her job, which the court interprets as a claim for constructive discharge. The facts show, however, that she sought help because she was doing work for two people. Defendant hired plaintiff's choice of a helper, Ms. Daw, but then realized that Ms. Daw was not really helping plaintiff and was unqualified to work in the upholstery department. Thus, defendant increased its effort to hire a full-time upholsterer and hired Mr. Bowman to give plaintiff some relief. Plaintiff was dissatisfied with this new arrangement, however, because she felt she would lose money if Mr. Bowman took over the upholstery work because plaintiff would have fewer "pieces" to complete. To prove constructive discharge, however, plaintiff must show "that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Kilgore v. Thompson & Brock Management, Inc.* 93 F.3d 752, 754 (11th Cir. 1996). She has failed to do so. Furthermore, "[a] constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation." *Id.* Plaintiff resigned on the same day that Mr. Bowman came to work. She did not work long enough to know that she would lose a significant amount of money; she might have been able to sew more, having been relieved of the upholstery work. Thus, to the extent that plaintiff was stating a claim for constructive discharge, defendant is entitled to summary judgment on that claim.[4]

---

[4] Plaintiff also might be arguing that she was demoted when Mr. Bowman was hired. This claim is without merit. Mr. Bowman was hired because plaintiff needed help. In fact, plaintiff's requests for help and need to bring in help of her own prompted the defendant's action. Hiring Mr. Bowman on these facts does not constitute an adverse employment action against plaintiff.

7

Plaintiff also contends that she was subjected to a hostile work environment. Plaintiff's claim fails for a number of reasons. First, plaintiff has not produced any evidence that any hostile statements were made. Second, both the alleged "dumb bitch" comments and the alleged "PMS" comment were made in 1993 or before, well over 180 days prior to February 1, 1995, when plaintiff filed her EEOC charge. Third, plaintiff has not shown that the employer "knew or should have known of the [alleged] harassment in question and failed to take prompt remedial action" as to the two statements above. *Kilgore*, 93 F.3d at 753 (citations omitted). Finally, to prove hostile environment sexual harassment, plaintiff must show that the harassment was "sufficiently severe or pervasive 'to alter the conditions of [plaintiff's] employment and create an abusive working environment.'" *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citing *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)). Assuming, *arguendo*, that the other statements, regarding upholstery being a man's job and that the men could be paid more so that their wives could quit working, were made, plaintiff's claim would still fail because the statements were not sufficiently severe or pervasive to meet the standard for proving sexual harassment.

## CONCLUSION

Based on the foregoing, the court is of the opinion that defendant's motion for summary judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 28th day of April, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge